J-S87024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KATHRYN GALLAGHER | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| KRISTEN RICHARDS | | |
| Appellee | | No. 960 MDA 2016 |

Appeal from the Order Entered May 17, 2016
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2015-CV-1859-CV

BEFORE:    LAZARUS, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:                **FILED MARCH 13, 2017**

Appellant, Kathryn Gallagher, appeals from the order granting summary judgment in favor of Appellee, Kristen Richards.  Among other things, Gallagher contends material issues of fact exist as to whether she knew or had reason to know of the water pipe[1] over which she tripped on November 12, 2014.  We affirm.

We state the facts as construed in Gallagher's favor. Gallagher has resided in an apartment in a multi-unit low-rise rowhome in Harrisburg since October 2012, or just over two years prior to her accident.  Her rowhome has two entrances: a main entrance on Forster Street and a side entrance on Green Street. Richards resides on Green Street in a rowhome just two doors

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The record also refers to the pipe as a valve, valve box, cover, water cover, or valve cover.  For the convenience of the parties, we use "pipe."

away from Gallagher's home — that is, two rowhomes separate Gallagher's rowhome from Richards' rowhome.

Gallagher uses the Green Street entrance 95% of the time. N.T. Gallagher Dep., 9/11/15, at 22. Ever since she moved to her apartment in 2012, Gallagher was aware of pipes protruding from the Green Street sidewalk, including the pipe in front of Richards' home. Throughout that time, Gallagher believed the pipes were unsafe, but she did not contact the water company because she did not know the pipes were water pipes. *Id.* at 38. She would walk around the pipes and could not ever recall tripping over any pipe prior to her accident. *Id.* at 32.

Gallagher used the Green Street entrance at least once or twice per day to commute to work or walk her dog. Prior to her accident, Gallagher often walked her dog on Green Street, either on the brick sidewalk adjacent to her rowhome and Richards' rowhome, or on the opposite sidewalk. Gallagher would walk on the portion of the sidewalk where the accident occurred four to six times per week. N.T. Gallagher Dep. at 26, 29. It was fairly common for Gallagher to look down at the sidewalk when she walked her dog because she was vigilant about ensuring her dog did not eat or step in something lying on the sidewalk. *Id.* at 28.

The early morning of November 12, 2014, was a cold, clear day with no precipitation. N.T. Gallagher Dep. at 43-44. Gallagher walked her dog that morning, but does not recall whether she did so on Green Street. *Id.* at 44. After she returned from walking the dog, she exited on Green Street

around 10:30 a.m. *Id.* at 60. She intended to walk to her car, which was parked a block away, and drive to work. Gallagher testified that she was wearing her winter coat and carrying a drink — either a water bottle or coffee — and a cell phone in one hand, and her work bag in the other hand. *Id.* at 45-46. Gallagher was also wearing eyeglasses, as she is farsighted, and flat rubber-soled shoes. She was on medication, but the medication did not affect her balance or vision. *Id.* at 49. Gallagher said she was thinking about her work day. *Id.* at 62.

As she walked out of her Green Street exit and proceeded toward her car, Gallagher first passed two pipes with a low profile — pipes on which she could potentially stub her toe. N.T. Gallagher Dep. at 50-52. Then, she tripped on the pipe in front of Richards' door and fell. *Id.* at 56. Gallagher saw the pipe as she tripped. Her right toe or toes hit the pipe, which was "almost four inches off the ground." *Id.* at 53, 55.[2] She struck the pipe with sufficient force that she was "elevated up into the air" before falling straight forward. *Id.* at 53. As a result, she broke her left kneecap and had other injuries. *Id.* at 50. She said that she did not injure her head because she "was sliding." *Id.*

Gallagher explained that she did not see the pipe prior to falling because she usually walks with her head up in order to be aware of her

_____

[2] Gallagher first testified that her right toe hit the pipe and later testified that all of her toes on her right foot hit the pipe.

surroundings. N.T. Gallagher Dep. at 57. Gallagher variously testified that she (1) "probably was not looking" at the sidewalk that morning, or (2) might or might not have glanced down at the sidewalk. *Id.* She remembered that she was looking at her car that was parked further down the block. Gallagher acknowledged that if she was paying greater attention, she could have avoided tripping and falling, and that if she was located five feet in front of the water pipe and looked down, she would have seen it. *Id.* at 58-59. Gallagher did not testify that her view of the pipe was obstructed or concealed (by other pedestrians or leaves, for example) or that she was distracted by an outside influence (such as another pedestrian or the sound of a vehicle horn).

Gallagher contacted the water company a few weeks after she fell. After a water company crew examined and photographed the area, the company sent an e-mail dated December 1, 2014, that disclaimed responsibility and said it was "the home owner's responsibility for anything that is on their sidewalk." N.T. Gallagher Dep. at 34.

On March 11, 2015, Gallagher sued Richards for negligence, alleging that Richards failed to "eliminate the dangerous condition created" by the raised pipe in the sidewalk in front of her house, failed to ensure the pipe was flush with the sidewalk, and failed to repair the raised pipe. Am. Compl. at ¶ 7. After discovery, Richards filed a motion for summary judgment. The court heard argument and then granted Richards' motion on May 17, 2016.

In a memorandum,[3] the trial court explained that Gallagher walked across Richards' sidewalk as a licensee, and that, under Section 342 of the Restatement (Second) of Torts (1965), Richards had no duty to Gallagher that would give rise to liability for negligence. The court stated:

> "A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved." ***Rossino v. Kovacs***, 553 Pa. 168, 172, 718 A.2d 755, 757 (1998) (citing Restatement of Torts (Second) § 342).
>
> *     *     *
>
> Plaintiff clearly testified that she was very familiar with the condition of the sidewalk in front of Defendant's residence, having walked in front of it approximately three to six times a week for over two years. Furthermore, Plaintiff clearly testified that she considered the pipe unsafe since the first time that she noticed it. Based on Plaintiff's testimony, Defendant cannot be held liable because Plaintiff knew about the condition and was aware of the risk involved. ***See Himes v. New Enter. Stone & Lime Co.***, 399 Pa. Super. 301, 308, 582 A.2d 353, 357 (1990) ("a duty on the part of the possessor of the land is not present in the present case because Ms. Himes knew or had reason to know of the condition of the bridge and the risk involved in traversing it.").

Trial Ct. Op. at 2-3.

---

[3] Gallagher's brief did not include the trial court's memorandum opinion, which is required by Pa.R.A.P. 2111(b).

Gallagher timely appealed and raises the following issues:

A. Whether the trial court erred by granting [Richards'] motion for summary judgment when there existed genuine issues of fact as to whether Ms. Gallagher knew or had reason to know of the water pipe and the risk involved.

1. Whether the water pipe was sufficiently obvious and open at the time Ms. Gallagher fell.

2. Whether a reasonable person in Ms. Gallagher's position would have forgotten about the pipe's presence in the moments before falling.

B. Whether homeowners should be insulated from liability solely on the basis that an open and obvious defect, of which they are aware, is also known to a pedestrian.

Gallagher's Brief at 3-4.

The standard for reviewing a grant of summary judgment is well settled:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Toro v. Fitness Int'l, LLC***, 150 A.3d 968, 972 (Pa. Super. 2016) (citation omitted).

Here, Gallagher sought to hold Richards liable for negligence.

> In order to hold a defendant liable for negligence, the plaintiff must prove the following four elements: (1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff.

***Nationwide Mut. Fire Ins. Co. v. Modern Gas***, 143 A.3d 412, 415 (Pa. Super. 2016). The first requirement, duty, "is an essential element of a negligence claim," ***Alderwoods (Pa.), Inc. v. Duquesne Light Co***., 106 A.3d 27, 31 (Pa. 2014), and whether a defendant has a duty that will give rise to liability for negligence is a question of law as to which our scope of review is plenary. ***Newell v. Montana West, Inc.***, ____ A.3d ____, 2017 WL 219102, *2 (Pa. Super., Jan. 19, 2017).

When she used the sidewalk in front of Richards' rowhome, Gallagher was acting as a licensee. ***See Alexander v. City of Meadville***, 61 A.3d 218, 221-22 (Pa. Super. 2012); ***see generally Rossino v. Kovacs***, 718 A.2d 755, 757 (Pa. 1998) (defining a "licensee" as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent" (citing Rest. 2d Torts § 330)). Therefore, as the trial court held, any duty of Richards to Gallagher with respect to the condition of the sidewalk is governed by Section 342 of the Second Restatement of Torts, which provides:

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved.

Both parties agree that this case is governed by Section 342. Gallagher's Brief at 10-11; Richards' Brief at 7-8.

We have held that a possessor of land may be liable under Section 342 "only if all three criteria" under that section are met. *Himes v. New Enter. Stone & Lime Co.*, 582 A.2d 353, 356 (Pa. Super. 1990), *appeal denied*, 590 A.2d 758 (Pa. 1991); *accord Long v. Manzo*, 682 A.2d 370, 373 (Pa. Super. 1996) ("[e]ach of those three elements must be satisfied before a possessor of land will be subject to liability"), *appeal denied*, 693 A.2d 967 (Pa. 1997). The trial court held that Gallagher may not recover under Section 342 because she cannot satisfy the section's third requirement — that she did "not know or have reason to know of the condition and the risk involved." With respect to this requirement, Comment *l* to Section 342 states:

*Dangers known to licensee.* The licensee, who enters land with no more than bare permission, is entitled to nothing

- 8 -

more than knowledge of the conditions and dangers which he will encounter if he comes. If he is warned of the actual conditions, and the dangers involved, or if he discovers them for himself without such warning, and fully understands and appreciates the risk, he is in a position to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining. Therefore, even though a dangerous condition is concealed and not obvious, and the possessor has given the licensee no warning, if the licensee is in fact fully aware of the condition and the risk, there is no liability to [the possessor].

Here, the record viewed in Gallagher's favor substantiates the trial court's determination that Gallagher knew about the pipe protruding from the sidewalk in front of Richards' house and fully understood and appreciated the risk of injury presented by that pipe. Gallagher had lived at her residence for more than two years and walked on that sidewalk four to six times each week. She had seen the pipe protruding from the sidewalk and walked around it. She testified that she had believed the pipe was unsafe. As the trial court recounted, Gallagher testified "that [Richards'] water pipe was obvious because it was sticking up, and that she believed that the water pipes were unsafe since the time that she moved in to her apartment." Trial Ct. Op. at 3. In view of this uncontradicted evidence, the trial court did not err in holding that Gallagher could not recover under Section 342 of the Second Restatement of Torts. *See Himes*, 582 A.2d at 356.

Gallagher's brief presents two responses. First, in what she frames as her second issue, Gallagher says that "homeowners should not be insulated from liability solely on the basis that an open and obvious defect, of which

they are aware, is also known to a pedestrian." Gallagher's Brief at 19 (capitalization omitted). Though not clearly developed, this argument appears to contend that Pennsylvania law should impose liability on a possessor of land for injuries to a pedestrian licensee regardless of whether the licensee knew of the dangerous condition causing her injury. Thus stated, Gallagher's argument is a request that we disregard the requirements of Section 342 of the Second Restatement when considering Richards' liability. But we are not free to do that.

The relevant Restatement provision, in the form of its predecessor in the First Restatement of Torts (1934), has been a part of Pennsylvania law since the Supreme Court first applied it in 1936. *See Di Marco v. Pennsylvania R. Co.*, 183 A. 780, 782 (1936); *see also Cutler v. Peck Lumber Mfg. Co.*, 37 A.2d 739, 740-41 (Pa. 1944). The Supreme Court adopted Section 342 of the Second Restatement in 1970. *See Sharp v. Luksa*, 269 A.2d 659, 661 (Pa. 1970); *see also Rossino*, 718 A.2d at 757. As an intermediate appellate court, this Court is "duty-bound to effectuate [the Supreme] Court's decisional law" and "lacks the authority to determine that [the Supreme] Court's decisions are no longer controlling." *Walnut Street Assocs. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 480 (Pa. 2011). We therefore are bound by the requirements in Section 342.[4]

_____

[4] The case cited by Gallagher for a contrary result, *Johnson v. Bruner*, 61 Pa. 58 (Pa. 1869), is inapposite. That case dealt with the duty owed by an employer to its employee, a minor, who fell through a trap door. The
*(Footnote Continued Next Page)*

- 10 -

Gallagher's other argument is that application of Section 342(c) presents a jury question, and that it therefore was error for the trial court to decide this case on summary judgment. Although "whether the licensee knew or had reason to know of the condition [of the relevant property] and its attendant risks[] is usually a question of fact for the jury[, . . . t]his question may be decided by the court . . . if reasonable minds could not differ." *Long*, 682 A.2d at 373. Thus, we have not hesitated to affirm an entry of summary judgment on this issue when the record discloses that the licensee's knowledge is not subject to dispute. *See, e.g.*, *Himes*, 582 A.2d at 356-57; *see also Long*, 682 A.2d at 374 (affirming compulsory nonsuit). Here, as the trial court held, the undisputed evidence made clear that Gallagher was aware of the hazardous condition posed by the pipe on Richards' sidewalk. The trial court therefore did not err in entering summary judgment on this issue.

In contesting this result, Gallagher identifies the specific questions that she wishes to present to the jury as "whether the water pipe was sufficiently obvious and open at the time Ms. Gallagher fell" and "[w]hether a reasonable person in Ms. Gallagher's position would have forgotten about the pipe's presence in the moments before falling." Gallagher's Brief at 4;

_____

*(Footnote Continued)* ————————————

decision had nothing to do with a homeowner's duty to a mere licensee permitted to traverse her sidewalk, and it therefore was not governed by the rule now set forth in Section 342 to govern this situation.

*see id.* at 11-18. Gallagher's argument betrays a misunderstanding of Section 342.

The premise behind Gallagher's argument is that it is "within the realm of possibility" that "she did not see or consciously appreciate the condition and the risk it posed *at the time she fell*." Gallagher's Brief at 11 (emphasis in original). Therefore, she claims, there should be a trial regarding whether the dangerous condition of the sidewalk was "obvious" or "open" at the time of her injury. But that is not what Section 342(c) requires. Rather, the only question under that provision is whether the licensee "d[id] not know or have reason to know of the condition and the risk involved." **See** Rest. 2d Torts § 342(c). As the Restatement points out, "If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it." Rest. 2d Torts § 342, Com. *b*. But the licensee's knowledge of the condition might just as well arise from notice given by the homeowner, from the licensee's own investigation, or from some other source. **See id.**, Com. *l.* "Therefore, even though a dangerous condition is concealed and not obvious, and the possessor has given the licensee no warning, if the licensee is in fact fully aware of the condition and the risk, there is no liability to [the possessor]." **Id.** Here, Gallagher admitted that she knew of the hazard presented by the pipe protruding from Richards' sidewalk. Trial Ct. Op. at 2-3; N.T. Gallagher

Dep. at 38. Therefore, no trial was needed to determine how "open" or "obvious" that protrusion was.[5]

Similarly, Gallagher argues at length that even though she knew of the protruding pipe, she reasonably may "have forgotten about the pipe's presence in the moments before falling." Gallagher's Brief at 15 (capitalization omitted). In support, Gallagher's brief discusses cases in which pedestrians were held not to be negligent merely because of such lapses in memory. *See id.* at 15-19 (discussing *Weitz v. Baurkot*, 406 A.2d 1138, 1139-40 (Pa. Super. 1979), and *Vuynovich v. Midland Borough*, 25 Pa. D. & C.2d 509 (C.P. Beaver 1961)); *see also id.* at 20-21 (discussing *Marks v. Redner's Warehouse Mkts.*, 136 A.3d 984 (Pa. Super. 2016) (contributory negligence decision applying Maryland law)). But, once again, that is not a relevant question under this provision of the Restatement.

Section 342 sets forth a rule to determine whether a possessor of land "owed a duty of care" to a licensee. *Alexander*, 61 A.3d at 221; *see id.* at 223. If the licensee knew or had reason to know of the dangerous condition

---

[5] The main case on which Gallagher relies, *Robinson v. City of Philadelphia*, 2012 WL 8678953, 2012 Pa. Commw. Unpub. LEXIS 417 (Pa. Cmwlth. 2012), does not call for a different result. Unlike Gallagher, the plaintiff in that case did not admit that she knew of the hazard over which she tripped. The plaintiff agreed that the hazard appeared obvious when viewed in photographs after the accident, but there was a factual dispute regarding whether she should have seen the hazard before she fell. *Id.*, 2012 WL 8678953, at *4-*5, 2012 Pa. Commw. Unpub. LEXIS 417, at *12-*16.

of the property under Section 342(c), then the possessor of the property owes the licensee no duty with respect to that condition. **See Cutler**, 37 A.2d at 740-41. It therefore does not matter whether the licensee once knew of the condition and then reasonably forgot at the moment she tripped, or whether the licensee may have been subject to distractions or other factors that made her tripping non-negligent. Section 342(c) does not inquire whether the licensee was negligent; it inquires whether she know of the condition, and nothing more. Accordingly, Gallagher's discussion of cases about whether a plaintiff's contributory (or comparative) negligence presented jury questions that were not amenable to summary judgment is beside the point.

Although she knew there was a pipe protruding from Richards' sidewalk, Gallagher tripped on it and was injured. Richards is not liable to Gallagher for those injuries because Richards owed no duty to Gallagher under Section 342 of the Second Restatement of Torts. There are no material factual disputes presented by this question. Accordingly, having discerned no error of law or abuse of discretion, we affirm the trial court's grant of summary judgment. **See Toro**, 150 A.3d at 972.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/13/2017